UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SYLVIA  FUENTES, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-390 |
| | § | |
| ERASMUS  GOMEZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Sylvia Fuentes, individually and as representative of the estate of Samuel Toomey; Jonathon Kelly Toomey; Joshua Toomey; Everett Toomey; and Hannah Toomey (collectively "Plaintiffs") have filed this suit under 42 U.S.C. § 1983 against Erasmus Gomez ("Defendant Gomez") and Aldo Garza ("Defendant Garza") for depriving Samuel Toomey of his Fourteenth[1] Amendment rights under color of state law.  (D.E. 1, Pages 4-5).  Pending before the Court is Defendants' Motion for Summary Judgment.  (D.E. 19).  For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED in part**.

## I.      JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  Venue is proper in this Court because the events giving rise to the claim occurred in the Southern District of Texas.  *See* 28 U.S.C. § 1391(b)(2).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Samuel Toomey ("Toomey") was arrested by the Corpus Christi Police Department on September 14, 2014 at approximately 7:00 p.m.  (D.E. 19-2, Page 6).  Toomey was taken to the

---

[1] Plaintiffs' complaint alleges violation of Toomey's Fourth Amendment rights.  (D.E. 1, Page 4).  However, the substance of Plaintiffs' complaint makes clear the cause of action is for violation of the Fourteenth Amendment.

Nueces County Jail and placed on a thirty minute suicide prevention watch. (D.E. 19-2, Page 6). Toomey was originally placed on suicide watch because he was arrested for multiple murders. (D.E. 19-1, Page 60 and D.E. 19-2, Pages 28, 34, 36, 37). On numerous occasions after his arrest, medical personnel evaluated Toomey and Toomey denied having suicidal ideations. (D.E. 19-1, Pages 22, 35, 38, 43, 52). Two days later, on September 16, 2014, Toomey indicated to a corrections officer that he was hearing voices telling him he did not deserve to live. (D.E. 19-1, Page 33 and D.E. 19-2, Page 29). Due to this statement, Toomey's status was updated by mental health staff, and Toomey was again moved to a holding cell and placed on a thirty minute suicide watch. (D.E. 19-1, Page 33 and D.E. 19-2, Page 29). On September 18, 2014, Toomey was moved to cell 43 of unit 4P at approximately 7:00 p.m. (D.E. 19, Page 11 and D.E. 19-2, Page 28). Defendant Gomez was on duty from 3:00-11:00 p.m. on September 18, 2014 and was responsible for unit 4P. (D.E. 19-3, Page 27 Lines 1-18). Toomey was taken from his cell to the medical department for an evaluation at 9:53 p.m. and returned to his unit at 10:10 p.m. (D.E. 19-2, Page 6). The Nueces County Jail Thirty Minute Watch Sheet shows Defendant Gomez conducted thirty minute checks on Toomey throughout his shift. (D.E. 20-6, Page 21). Defendant Gomez conducted his last thirty minute watch at 11:00 p.m. prior to the relieving officer arriving in the unit. (D.E. 19-2, Page 28 and D.E. 20-6, Page 21).

Defendant Garza was the officer relieving Defendant Gomez. (D.E. 19-3, Page 37 Line 23-Page 38 Line 1). Defendant Gomez informed Defendant Garza that Toomey was on a thirty minute watch and Toomey was sleeping without his pants on. (D.E. 19-3, Page 42 Line 21-Page 43 Line 1 and D.E. 19-4, Page 19 Line 2-Page 20 Line 8). Defendant Garza and Defendant Gomez conducted roll call together, which is a process to ensure the identity and security of all inmates. (D.E. 19-3, Page 49 Line 25-Page 50 Line 10). During roll call, Defendant Gomez and

Defendant Garza believed Toomey was sleeping on his stomach with no pants on. (D.E. 19-4, Page 27 Line 13-Page 28 Line 6). Neither officer attempted to wake Toomey or otherwise elicit a confirmation of his identity or well-being. (D.E. 19-3, Page 51 Lines 5-20 and D.E. 19-4, Page 46 Line 5-Page 47 Line 15). Defendants simply went to Toomey's cell and looked in to observe his condition. (D.E. 19-3, Page 51 Lines 15-18).

Defendant Garza returned to Toomey's cell twenty to twenty-five minutes later to provide Toomey with his hour out of his cell and observed Toomey had one leg and one arm hanging off of the bunk. (D.E. 19-4, Page 33 Lines 14-23). Defendant Garza also observed a ligature around Toomey's neck. (D.E. 19-4, Page 32 Lines 15-24). Defendant Garza accessed Toomey's cell and found him unresponsive. (D.E. 19-4, Page 34 Lines 1-11). Toomey's pants were tied around his neck and the other end was tied to the desk. (D.E. 19-4, Page 39 Lines 9-14). Defendant Garza went to call the signal for a hanging (35H) at 11:30 p.m. (D.E. 19-4, Page 34 Line 24-Page 35 Line 1 and D.E. 19-1, Page 4). Defendant Garza made no efforts to check whether Toomey was alive and did not try to cut the ligature or loosen the tension. (D.E. 19-4, Page 41 Line 19-Page 42 Line 7).

Medical personnel responded to Toomey's cell at 11:31 p.m. and found Toomey lying on his bunk unresponsive. (D.E. 19-1, Page 4). The medical personnel utilized an automated external defibrillator ("AED") to check his vitals but Toomey was not breathing and had no pulse. (D.E. 19-1, Page 4). Medical personnel initiated CPR at 11:32 p.m. and administered breaths and compressions as instructed by the AED. (D.E. 19-1, Page 4). The AED did not advise medical staff to shock Toomey. (D.E. 19-1, Page 4). EMS responded at 11:40 p.m. and continued CPR as they transported him to Spohn Memorial Hospital. (D.E. 19-1, Page 4).

Toomey was pronounced dead at Spohn Memorial Hospital at 12:19 a.m. on September 19, 2014. (D.E. 19-1, Page 2).

Plaintiffs filed their complaint on September 13, 2016. (D.E. 1). On September 15, 2017, Defendants filed their Motion for Summary Judgment. (D.E. 19). On October 6, 2017, Plaintiffs filed their Response. (D.E. 20).

## III. DISCUSSION

Defendants move for summary judgment asserting (1) Plaintiffs do not have a viable § 1983 claim, (2) Defendants are immune from suit by qualified immunity, and (3) Plaintiffs do not have viable state law claims to the extent any are asserted. (D.E. 19). Defendants argue they did not act intentionally or with deliberate indifference and thus, Plaintiff cannot recover under § 1983. (D.E. 19, Pages 11-16). Defendants assert they did not have a culpable state of mind and their actions at most rose to the level of negligence. (D.E. 19, Page 15). Defendants also argue they are entitled to qualified immunity because no evidence supports the claim that they violated Toomey's constitutional rights. (D.E. 19, Pages 18-19). Defendants further assert that, even if there was a violation, their actions were objectively reasonable because Defendants conducted the required watches of Toomey and at most, their actions amounted to negligence. (D.E. 19, Pages 20-21). Finally, Defendants argue Plaintiffs have not alleged specific state law claims and to the extent they do, the Court should decline to exercise jurisdiction if it finds Defendants are entitled to summary judgment on the federal claims. (D.E. 19, Pages 21-22). Alternatively, Defendants move for summary judgment on any state law claims because Plaintiffs cannot meet their burden. (D.E. 19, Page 22).

Plaintiffs allege there is enough evidence to create genuine issues of material fact regarding their claims. (D.E. 20, Page 5). Plaintiffs cite jail policies and state genuine issues of

material fact exist that Defendants were deliberately indifferent because of the implementation of those policies in this case. (D.E. 20, Page 18). Plaintiffs argue Defendants have failed to address their § 1983 claim based on a state-created danger. (D.E. 20, Page 2). Finally, Plaintiffs state they have not asserted any claims under state law and that any language concerning pendant jurisdiction was inadvertent. (D.E. 20, Page 18).

### A.    Summary Judgment Standard

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. An issue is material if its resolution could affect the outcome of the action. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Generally, the Court will not weigh the evidence or evaluate the credibility of witnesses. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587. To sustain this burden, the non-movant cannot rest on the mere allegations of the pleadings.

*See Celotex*, 477 U.S. at 324; *Caboni*, 278 F.3d at 451; Fed. R. Civ. P. 56(e). After the nonmovant has been given an opportunity to raise a genuine factual issue, summary judgment will be granted if no reasonable juror could find for the nonmovant. *Caboni*, 278 F.3d at 451.

### B.      Analysis

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). "The constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

### 1.      Qualified Immunity

Qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (alterations in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A court should not deny immunity unless "existing

precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

When a defendant raises qualified immunity as a defense and moves for summary judgment on that basis, the plaintiff must identify or submit evidence raising genuine issues of disputed fact material to determining the reasonableness of the official's conduct. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). The moving party is not required to put forth evidence to meet his summary judgment burden for a claim of immunity. *See Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000). The movant raising the qualified immunity defense need only plead in good faith that he is entitled to immunity. *Id.*

"To defeat a claim of qualified-immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). To discharge this burden, the plaintiff must satisfy a two-prong test. *U.S. ex rel. Parikh v. Brown*, 587 F. App'x 123, 127-28 (5th Cir. 2014); *Atteberry*, 430 F.3d at 251-52. First, the plaintiff must show, viewing the summary judgment evidence in the light most favorable to him, the defendant violated a constitutional right. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). If the court determines "that the alleged conduct did not violate a constitutional right, [the] inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). Second, the plaintiff must show the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the alleged

violation. *Brown*, 623 F.3d at 253; *Freeman*, 483 F.3d at 411. If the court answers both of these questions in the affirmative, the official is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410. "Even if the government official's conduct violates a clearly established right, the official is entitled to qualified immunity if his conduct was objectively reasonable." *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008) (citing *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998)).

The plaintiff cannot rest on conclusory allegations and assertions. *See Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof" but must offer more than "mere allegations") (quotation omitted). District courts have discretion in determining the order in which to analyze the two-part qualified immunity test. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). In cases where defendants have not acted in unison, "qualified immunity claims should be addressed separately for each individual defendant." *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 480 (5th Cir. 2014) (citation omitted).

### a.     Violation of Clearly Established Right

"Plaintiffs allege Defendants jointly and/or severally deprived Toomey of his Fourth Amendment rights and those rights, privileges, and immunities secured by the Constitution incorporated and applied to the states through the Fourteenth Amendment." (D.E. 1, Page 4). Plaintiffs claim Defendants violated Toomey's rights by (a) acting with deliberate indifference to a substantial and known risk of harm; (b) failing to intervene where such intervention would have prevented Toomey's death; and (c) creating a danger, which otherwise would not have

existed but for the conduct of Defendants, making the opportunity of harm more likely to occur. (D.E. 1, Pages 4-5).

### i.    Fourth Amendment

Since Plaintiffs' complaint states the cause of action arises out of a violation of the Fourth Amendment, the merits of such claims are briefly examined.  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The protections of the Fourth Amendment are not implicated by the facts alleged.  "While the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments."  *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998).  Plaintiffs' claims relate to actions taking place in the Nueces County Jail after Toomey's arrest.  Therefore, Plaintiffs cannot recover pursuant to § 1983 for alleged violations of Toomey's Fourth Amendment rights.  *See Saenz v. City of El Paso, Tex.*, 2015 WL 4590232, at *3 (W.D. Tex. Jan. 28, 2015) ("Because Saenz '[was] arrested and . . . placed into police custody . . . [he became] a pretrial detainee, protected against excessive force by the Due Process Clause' of the Fourteenth Amendment.") (alterations in original).

### ii.    Fourteenth Amendment

The facts of this case clearly implicate the protections of the Fourteenth Amendment.  A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment.  *See Wolfish*, 441 U.S. at 535-36; *Jacobs v. West Feliciana Sheriff's*

*Dep't*, 228 F.3d 388, 393 (5th Cir. 2000).  As such, a pretrial detainee is entitled to adequate medical care, including protection from known suicidal tendencies.  *See Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649 (5th Cir. 1996) (en banc).  Specifically, the Fifth Circuit has held "[t]he failure to provide pre-trial detainees with adequate protection from their known suicidal impulses is actionable as a violation of the detainee's constitutional rights."  *Hyatt v. Thomas*, 843 F.3d 172, 179 (5th Cir. 2016) (citing *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 391 (5th Cir. 1992)).  However, the Fifth Circuit has not "established with any clarity as to what those [protective] measures must be."  *Hyatt*, 843 F.3d at 179 (quoting *Hare*, 135 F.3d at 328-39); *Jacobs*, 228 F.3d at 394-95 ("we cannot say that the law is established with any clarity as to what [measures jailers must take to prevent inmate suicide]").

The Fifth Circuit has held pretrial detainees' constitutional complaints of Fourteenth Amendment violations are evaluated under one of two rubrics: "jail conditions" or "episodic acts or omissions."  *Hare*, 74 F.3d at 644-45.  A condition of confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement."  *Id.* at 644.  Episodic acts claims occur "where the complained-of harm is a particular act or omission of one or more officials."  *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc).  In an episodic act or omission case, there are different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue.  *See Hare*, 74 F.3d at 649 n. 14.

"[S]ince 1989, it has been clearly established that officials will only be liable for episodic acts or omissions resulting in the violation of a detainee's clearly established constitutional rights if they 'had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.'"  *Jacobs*, 228 F.3d at 393-94 (quoting *Hare*,

74 F.3d at 650). In a case involving an episodic act, deliberate indifference is present when (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn, (2) the official actually drew that inference, and (3) the official's response indicates the official subjectively intended that such harm occur. *See Thompson v. Upshur*, 245 F.3d 447, 458-59 (5th Cir. 2001); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Jacobs*, 228 F.3d at 394. "[D]eliberate indifference cannot be inferred merely from a negligent or even grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Also, to be deliberately indifferent, "an officer's acts must constitute at least more than a mere 'oversight.'" *Jacobs*, 228 F.3d at 395 (quoting *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 635 (5th Cir. 1999)). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

### aa.    Defendant Gomez

It is undisputed that Toomey was classified as a suicide risk and Defendant Gomez was aware of that risk. (D.E. 19-3, Page 22 Line 24). According to the summary judgment evidence, the Nueces County Jail policy for suicide checks required visual checks of the inmates every thirty minutes. (D.E. 20-13, Page 31[2]; D.E. 19-3, Page 19 Lines 3-22 and D.E. 20-11, Page 24 Line 2-Page 26 Line 11); *see also* 37 Tex. Admin. Code § 275.1. The policy required officers to visually check inmates for breathing or other confirmation of life and if the officer could not get visual confirmation, the officer then must enter the cell to confirm the inmate's well-being. (D.E. 20-11, Page 24 Lines 2-17 and D.E. 19-3, Page 19 Line 3-22). The Nueces County Thirty Minute Watch Sheet for Toomey during Defendant Gomez's shift on the day of Toomey's death

---

[2] The Nueces County Jail Standard Operations Manual as revised in 2002 describes a fifteen minute watch sheet used for documenting visual checks on inmates requiring special attention. (D.E. 20-13, Page 31). However, Sergeant Worthington's uncontroverted testimony was that the jail stopped using fifteen minute watches and only utilized one-on-one watches and thirty minute watches at the time of Toomey's death. (D.E. 20-11, Page 15 Line 17-Page 16 Line 6).

shows Defendant Gomez conducted a check within the required thirty minute time frame from the time Toomey was brought to his unit at 6:27 p.m. until his shift ended at 11:00 p.m. (D.E. 20-6, Page 21). During these checks, Defendant Gomez observed Toomey as being awake at each check from 6:27 p.m. until Toomey went to medical at 9:53 p.m. and then awake once he returned from medical at 10:10 p.m. until Defendant Gomez observed him lying down at 11:00 p.m. (D.E. 20-6, Page 21). Defendants argue Defendant Gomez conducted the checks as detailed by the watch sheet and by checking on Toomey every thirty minutes, Defendant Gomez complied with Nueces County jail policies. *See Jacobs*, 228 F.3d at 398 (holding deputy did not act with deliberate indifference even where he failed to comply with policy because he was "essentially following orders" and he did not make any decisions related to inmate's suicide prevention plan); *Estate of Schroeder v. Gillespie Cnty.*, 23 F.Supp.3d 775, 785 (W.D. Tex. 2014) (finding defendant was not deliberately indifferent where he was not involved in creating the suicide watch policy or choosing to put the inmate on suicide watch and defendant fulfilled his obligation under the policy). Defendants also argue that at worst any actions taken by Defendant Gomez amounted to negligence which cannot support a finding of deliberate indifference.

Plaintiffs contend these checks did not occur. Plaintiffs argue any notations were fabricated without any intent to perform checks on Toomey. (D.E. 20, Page 9). The jail's video monitoring system crashed in May 2013 and was not replaced until October 2014. (D.E. 20-11, Page 35 Lines 6-8, Page 36 Lines 8-10). Accordingly, the only persons who would be in a position to dispute whether or not the checks were done as detailed in the watch sheet would be Toomey and potentially other prisoners. Unfortunately, Toomey is deceased and unable to present evidence as to the checks performed. Plaintiffs present the statement of inmate Carlos

Betancourt from the Nueces County Sheriff's Department's internal investigation report, who told investigators officers cut corners by only putting the wand that tracks their location into the reader and moving on to the next point without checking every cell.  (D.E. 20-5, Page 15).  Betancourt also told investigators he "believes that somebody failed to do their checks right and that this guy was dead long before anybody realized."  (D.E. 20-5, Page 15).  However, Betancourt admitted he was not watching Toomey's cell and did not know if the officer had been doing the checks or not.  (D.E. 20-5, Page 15).  The summary judgment evidence does not contain any other statements by inmates that claim the checks did not occur.

Plaintiffs further assert Toomey was already dead during any checks performed, relying on statements by nurses and officers that Toomey's body was pale and cold to the touch.  (D.E. 20, Page 9 and D.E. 20-4, Pages 66, 67, 69, 70).  These same accounts indicate the unit was cold and Toomey was lying half-naked on a concrete slab.  (D.E. 20-4, Page 69).  Responding nurses stated Toomey was not stiff and they did not see any blood pooling on the bottom of his body. (D.E. 20-4, Pages 68, 69).  Additionally, the medical examiner, Dr. Ray Fernandez, averred lividity was not fixed, and there was no evidence of lividity on his stomach, which was the position he was found in.  (D.E. 19-7, Page 12 Lines 15-22 and Page 41 Lines 7-10).  Dr. Fernandez indicated there are numerous variables that can affect the temperature of someone's body and stated it would not surprise him if someone found Toomey's body cool to the touch one minute after he died due to Toomey's arteriosclerotic coronary artery disease.[3]  (D.E. 19-7, Page 42 Line 25-Page 44 Line 5).  However, Dr. Fernandez does not provide a time of death for Toomey.  (D.E. 19-7, Page 21 Lines 5-9 and D.E. 19-7, Page 46).

---

[3] Dr. Fernandez stated arteriosclerotic coronary artery disease is a hardening of the arteries which leads to coolness of the body due to poor circulation.  (D.E. 19-7, Page 43 Lines 21-25).

In cases where named defendants are the only witnesses to the historical events, the defendants have a strong incentive to provide a misleading and unimpeachable factual account. *Herrin v. Treon*, 459 F.Supp.2d 525, 541 (N.D. Tex. 2006) (citing *Bazan ex rel. Bazan v. Hidalgo Cnty*, 246 F.3d 481, 492 (5th Cir. 2001)). In these situations, the court "must also look at the circumstantial evidence that, if believed, would tend to discredit the . . . officer's story, and consider whether this evidence could convince a rational fact finder that the officer acted unreasonably." *Abraham v. Raso*, 183 F.3d 279, 294 (5th Cir. 1999) (citation omitted). Accordingly, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude that the checks did not occur as reported by Defendant Gomez or Toomey was already deceased during any checks. However, this does not end the inquiry because Plaintiffs must show the Defendant Gomez subjectively intended that the harm occur. *Thompson*, 245 F.3d at 459.

Plaintiffs do not present any evidence Defendant Gomez "subjectively intended that harm occur" as required for subjective deliberate indifference. *Estate of Allison v. Wansley*, 524 F. App'x 963, 971 (5th Cir. 2013) (citing *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009)); *Thompson*, 245 F.3d at 458-59; *Sanchez v. Young Cnty., Tex.*, 866 F.3d 274, 280 (5th Cir. 2017). It is conceivable that Defendant Gomez decided to allegedly not perform the thirty minute checks because Toomey was accused of murdering multiple people. However, Plaintiffs do not present this argument let alone evidence to support it. Plaintiffs only mention the fact that officers generally cut corners and do not look into every cell. (D.E. 20, Page 11). Though Plaintiff does not elaborate on the reason officers potentially cut corners, the reasonable inference would suggest officers were cutting corners out of laziness rather than subjectively

intending any harm occur. Plaintiffs present no other evidence Defendant Gomez subjectively intended the harm occur except the arguments the checks did not occur.

The Fifth Circuit has held the failure to follow policy alone evinces, at best, negligence, which is insufficient to support a finding of deliberate indifference. *Jacobs*, 228 F.3d at 398; *Estate of Pollard v. Hood Cnty., Tex.*, 579 F. App'x 260, 265 (5th Cir. 2014) (holding plaintiffs failed to raise a material fact from which a reasonable juror could conclude that the "failure to strictly comply with . . . visual checks reflected anything but negligent implementation of a plan meant to protect [his] safety."); *Cf. Shepard v. Hansford Cnty.*, 110 F.Supp.3d 696, 710-11 (N.D. Tex. 2015) (finding deliberate indifference where Defendant failed to perform any required fifteen minute face to face observations in accordance with jail policy and "intentionally prioritize[d] her other duties over her suicide watch duties."). The record contains evidence that Defendant Gomez may have been negligent in his failure to strictly to adhere to policy but subjective intent to harm cannot be inferred from a negligent, or even grossly negligent, response to a risk of harm. *Thompson*, 245 F.3d at 459. Therefore, Plaintiffs present no evidence that creates a genuine dispute of material fact that Defendant Gomez subjectively intended Toomey commit suicide or that any alleged failure by Defendant Gomez to strictly comply with the thirty minute checks reflects anything more than negligence or oversight. *See Estate of Pollard*, 579 F. App'x at 265; *Jacobs*, 228 F.3d at 398. Accordingly, Plaintiffs have failed to proffer any evidence to establish Defendant Gomez was subjectively deliberately indifferent related to the thirty minute checks.

As for the roll call performed jointly by Defendant Gomez and Defendant Garza, it is undisputed that Defendants violated roll call procedures by not having Toomey present himself. (D.E. 20, Pages 11-13; D.E. 19-3, Page 53 Line 24-Page 54 Line 1). Roll call procedures require

the outgoing and incoming officers at shift change to perform a cell check together to visually confirm each inmate is alive and properly identified by viewing the inmate's face compared to the picture on their armband. (D.E. 20, Page 8 and D.E. 20-4, Page 23). Defendant Gomez admits they violated roll call policy by not checking Toomey's armband. (D.E. 19-3, Page 53 Line 24-Page 54 Line 1). Despite this fact, the evidence viewed in the light most favorable to Plaintiffs raises nothing more than negligence or oversight. *See Jacobs*, 228 F.3d at 398.

During roll call, Defendant Gomez observed Toomey lying on his side, in the same position as his last check. (D.E. 19-3, Page 56 Line 23-Page 57 Line 3). Though Defendant Gomez did not observe Toomey's chest rising and falling and did not enter Toomey's cell, Defendant Gomez believed Toomey was asleep based on his previous observations. (D.E. 19-3, Page 60 Lines 24-25, Page 62 Lines 11-16). Defendant Garza averred he saw Toomey breathing during roll call and Defendants both reached the conclusion Toomey was asleep. (D.E. 19-4, Page 28 Lines 10-16). The Fifth Circuit has found similar facts do not rise to the level of subjective deliberate indifference. *See Gray v. Tunica Cnty., Miss.*, 100 F. App'x 281, 282 (5th Cir. 2004) (per curiam) (finding defendant was entitled to qualified immunity where defendant and nurse concluded decedent was sleeping and that they should not enter the cell despite observing decedent unclothed and in a "frog-like" position). Here, Toomey was lying on his bunk whereas in *Gray*, the decedent was in a strange position not indicative of normal sleeping behavior.

Even assuming Toomey was deceased at the time of roll call, Plaintiffs have not presented any evidence that Defendant Gomez's failure to strictly comply with the roll call procedures reflected anything more than negligence. *See Estate of Pollard*, 579 F. App'x at 265; *Jacobs*, 228 F.3d at 398. Plaintiffs may have established Defendant Gomez was negligent for

not attempting to verify Toomey's well-being, but an officer's negligent inaction does not violate due process. *Hare*, 74 F.3d at 645. As described previously, Plaintiffs present no evidence that Defendant Gomez subjectively intended the harm occur. Accordingly, Plaintiffs have not established a genuine dispute of material fact that Defendant Gomez acted with subjective deliberate indifference related to the roll call. Therefore, Defendant Gomez is entitled to qualified immunity for his conduct.

### bb. Defendant Garza

It is undisputed that Defendant Garza was aware of Toomey's thirty minute suicide watch. (D.E. 19-4, Page 19 Lines 2-8). Defendant Garza admits he violated roll call procedures by not checking Toomey's armband as well as the arm bands of other inmates who were sleeping. (D.E. 19-4, Page 46 Line 5-Page 47 Line 15). However, Defendant Garza did observe Toomey during roll call and observed Toomey lying on his stomach, wearing only a shirt. (D.E. 19-4, Page 27 Line 13-Page 28 Line 8). Defendant Garza averred he observed Toomey's chest rise and fall and saw Toomey did not have anything around his neck. (D.E. 19-4, Page 28 Lines 12-23 and D.E. 20-4, Page 23). Defendant Garza was informed by Defendant Gomez that Toomey was asleep and Defendant Garza chose not to wake Toomey up during roll call. (D.E. 20-4, Page 16). Additionally, Defendant Garza stated Toomey was lying down with his shirt on but not his pants and he could see Toomey's head. (D.E. 20-4, Page 18). Defendant Garza concluded Toomey was sleeping based on the information provided to him by Defendant Gomez and his own observations of Toomey. Defendant Garza decided he should not enter the cell to wake Toomey up.

Plaintiffs present no evidence to contradict Defendant Garza's statement that he observed Toomey breathing at this time. However, the only person who could dispute whether he was

breathing at the time is Toomey himself. Plaintiffs maintain Toomey was already dead prior to the roll call. Defendants argue the uncontroverted evidence shows Defendant Garza observed Toomey breathing during roll call. Plaintiffs do not dispute that the roll call check occurred but instead rely on the violation of roll call policy. (D.E. 20, Pages 11-13). As stated in relation to Defendant Gomez, even assuming Toomey was deceased at the time of roll call, Plaintiffs have failed to present evidence that the failure to strictly comply with roll call procedures reflected anything more than negligence. *See Gray*, 100 F. App'x at 282; *Jacobs*, 228 F.3d at 398; *Estate of Pollard*, 579 F. App'x at 265. Therefore, Plaintiffs have failed to demonstrate a genuine dispute of material fact that Defendant Garza acted with subjective deliberate indifference and have not shown Defendant Garza's conduct was such as to deprive him of qualified immunity for the violation of roll call procedures.

Subsequently, within 20-25 minutes Defendant Garza returned to Toomey's cell. (D.E. 19-4, Page 32 Lines 15-24). It is at this point that Defendant Garza observed Toomey's one arm and one leg hanging off the bunk. (D.E. 19-4, Page 33 Lines 14-23). Defendant Garza stated he could see a hanging apparatus from the doorway and accessed Toomey's cell. (D.E. 20-19, Page 34 Lines 5-11). After discovering Toomey with his pants tied around his neck, Defendant Garza left to secure the pod and to call the signal for a hanging. (D.E. 20-19, Page 34 Line 24-Page 35 Line 1). Defendant Garza did not take any actions to cut the ligature or loosen the tension. (D.E. 19-4, Page 41 Line 25-Page 42 Line 7). Defendant Garza also did not do anything to check whether Toomey was alive or dead. (D.E. 19-4, Page 41 Lines 19-24).

Again, the facts do not demonstrate that Defendant Garza's conduct was such that he should be deprived of qualified immunity. Defendant Garza immediately called for assistance upon finding Toomey unresponsive. *See Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003)

(finding defendants' conduct was only negligent where student became dehydrated and fell several times but rose to the level of deliberate indifference when the student became unconscious sometime later and defendants failed to call for an ambulance for one hour and forty-two minutes). Defendant Garza's failure to cut the ligature was at worst negligent. Nueces County's Basic County Corrections Course states officers should cut the victim down immediately but avoid cutting the knot if possible for any investigation. (D.E. 20-18, Page 11). Defendant Garza seems to have misunderstood the policy and thought he was not supposed to cut the ligature for the integrity of any future investigation. (D.E. 19-4, Page 38 Lines 13-22). Further, the Nueces County Jail's Standard Operations Manual instructs officers to call for immediate assistance, secure all inmates in their cells, and then implement necessary first aid procedures. (D.E. 20-14, Page 6). Defendant Garza immediately signaled for assistance and simultaneously took actions to secure the other inmate who was out of his cell at the time. (D.E. 19-4, Page 42 Lines 13-21).

Plaintiffs argue Toomey was deceased long before he was discovered. Plaintiffs also argue Garza simply entered the cell and asked Toomey if he was alright before going for help. (D.E. 20, Page 8). Even assuming Toomey was deceased when Defendant Garza's shift began at 11:00 p.m., Plaintiffs have presented no evidence that Defendant Garza subjectively intended the harm to occur or that his failure to discover Toomey prior to 11:30 p.m. was a result of anything more than negligence. *See Monzon v. Parmer Cnty., Tex.*, No. 2:06-cv-39-J, 2007 WL 1732384, at *6 (N.D. Tex. June 15, 2007) (finding no evidence defendant's failure to cut decedent down or administer CPR were done with deliberate indifference where defendant looked at the decedent, did not detect signs of life, and thought him to be dead); *Jacobs*, 228 F.3d at 398. The uncontroverted evidence indicates within a matter of seconds after calling the signal officers

from nearby units had arrived as well as medical personnel shortly after. (D.E. 20-19, Page 40 and D.E. 19-1, Page 4). The evidence does not contain any sign Defendant Garza subjectively intended Toomey suffer harm. Defendant Garza took action to get medical assistance for Toomey immediately upon discovering him hanged. Therefore, Plaintiff has failed to establish a genuine dispute of material fact that Defendant Garza's conduct rises to the level of subjective deliberate indifference. Accordingly, Defendant Garza is entitled to qualified immunity for his conduct.

### iii.    State-Created Danger

Plaintiffs also allege a state-created danger theory as the basis of liability for their § 1983 claims. It is not clear from their complaint or their response what Plaintiffs are alleging was the state-created danger. Regardless of what Plaintiffs claim was the state-created danger, their claim cannot survive summary judgment. Although not directly addressed in Defendants' motion, Defendants are entitled to qualified immunity on the state-created danger basis of liability. "Ordinarily, a state official has no constitutional duty to protect an individual from private violence." *McClendon*, 305 F.3d at 324 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). Despite this general rule, the Supreme Court in *DeShaney* held that where the state, through affirmative exercise of its powers, acts to restrain an individual's freedom to act through "incarceration, institutionalization, or other similar restraint of personal liberty," the state creates a "special relationship" between the individual and the state which imposes on the state a constitutional duty to protect that individual from danger, including, in some circumstances, private violence. *DeShaney*, 489 U.S. at 200. Other circuits have read language from *DeShaney* to imply a "state-created danger" exception to the private violence rule. *See, e.g., Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 434-35 (2d Cir.

2009); *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1306-07 (11th Cir. 2003); *Ruiz v. McDonnell*, 299 F.3d 1173, 1183-84 (10th Cir. 2002); *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066-67 (6th Cir. 1998); *Kneipp v. Tedder*, 95 F.3d 1199, 1201, 1208 (3d Cir. 1996); *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993).

However, the Fifth Circuit has "not yet determined whether a state official has a similar duty to protect individuals from state-created dangers." *McClendon*, 305 F.3d at 325. The Fifth Circuit has repeatedly declined to rule on whether the state-created danger theory applies, but has found that even if it did apply, it would not allow recovery for the plaintiff under the facts of the cases being examined. *See, e.g.*, *Hernandez ex rel. Hernandez*, 380 F.3d 872, 880 n. 1 (5th Cir. 2004); *McClendon*, 305 F.3d at 325–26; *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312-15 (5th Cir. 2002) (en banc); *Morin v. Moore*, 309 F.3d 316, 321-24 (5th Cir. 2002); *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997).

On two occasions the Fifth Circuit explicitly adopted the state-created danger theory but was ultimately reversed. *See McClendon v. City of Columbia*, 258 F.3d 432, 436 (5th Cir. 2001) (noting that the Fifth Circuit had "continued to recognize the existence of the theory" and thus applying the theory), *rev'd en banc*, 305 F.3d at 325 (holding that "neither this court nor the Supreme Court has yet determined whether a citizen has a constitutional right to be free from state-created dangers" and because the plaintiff failed to establish the necessary elements of the theory it would not apply even if available); *Breen v. Tex. A & M Univ.*, 485 F.3d 325, 337 (5th Cir. 2007) (holding that the state-created danger theory was "a valid basis for a claim on the set of facts alleged"), *rev'd*, 494 F.3d 516 (5th Cir. 2007) (granting rehearing *sua sponte* and issuing a subsequent opinion omitting discussion of state-created danger theory); *see also Rivera v.*

*Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 n. 5 (5th Cir. 2003) (recognizing that the panel's decision in *McClendon* "was vacated and with it our recognition of the [state-created danger] theory"). Thus, the Fifth Circuit's stance on the state-created danger theory as a basis of liability for a § 1983 claim is uncertain.

Accordingly, "[t]he reluctance of [the Fifth Circuit] . . . to embrace some version of the state-created danger theory despite numerous opportunities to do so suggest that, regardless of the status of this doctrine in other circuits, a reasonable officer in this circuit would . . . be unclear as to whether there is a right to be free from state-created danger." *Saenz v. City of McAllen*, 396 F. App'x 173, 177-78 (5th Cir. 2010) (quoting *McClendon*, 305 F.3d at 332 n. 12). "The state created danger theory has not been applied in this circuit with 'obvious clarity' to the specific conduct in question such that a reasonable officer would be aware that his actions were unlawful." *Saenz*, 396 F. App'x at 178. Therefore, the state-created-danger theory as a basis of liability was not clearly established at the time the incident occurred and Defendants are entitled to qualified immunity.

Even if the Fifth Circuit had adopted the state-created danger theory, Plaintiffs have failed to satisfy its elements. To recover under a state-created danger theory, a plaintiff must show "(1) the state actors created or increased the danger to the plaintiff and (2) the state actors acted with deliberate indifference." *McKinney*, 309 F.3d at 313; *Luevano v. Geyer*, 355 F. App'x 834, 836 (5th Cir. 2009). "Deliberate indifference in the state-created danger context requires both that a state actor knew of an excessive risk to the victim's health or safety and disregarded that risk." *Luevano*, 355 F. App'x at 836 (citing *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004); *McClendon*, 305 F.3d at 326 n. 8). "A state actor's actual knowledge is critical to the inquiry," thus a "state actor's failure to alleviate a significant risk that he should have

perceived but did not, while no cause for commendation, does not rise to the level of deliberate indifference." *McClendon*, 305 F.3d at 326 n. 8 (quoting *Farmer*, 511 U.S. at 827).

As discussed above, Plaintiffs have failed to establish a genuine dispute of material fact that Defendants were deliberately indifferent. Accordingly, Plaintiffs cannot show a violation of Toomey's constitutional rights. Therefore, even if the state-created danger theory was clearly established in this Circuit, Defendants would be entitled to qualified immunity and summary judgment.

### b.    Objectively Reasonable Conduct

Since the Court finds Defendants are entitled to qualified immunity because Plaintiffs have not established a violation of Toomey's constitutional rights, it does not have to address whether Defendants' conduct was objectively reasonable. *Lytle*, 560 F.3d at 410. However, the Court finds that even if Plaintiffs established a violation of Toomey's constitutional rights, Defendants' conduct was not objectively unreasonable in light of clearly established law.

If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted). Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the

defendant's exact act have been illegal. *Id*. at 236-37. An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown*, 623 F.3d at 253 (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Findings and conclusions in deliberate indifference cases are instructive in determining whether a defendant's actions are objectively reasonable in a given case. *See Thompson*, 245 F.3d at 459-60; *Jacobs*, 228 F.3d at 393-94.

Given the Fifth Circuit's assertion that "we cannot say that the law is established with any clarity as to what [measures jailers must take to prevent inmate suicide]," *Hyatt*, 843 F.3d at 179 (quoting *Hare*, 135 F.3d at 328-29); *Jacobs*, 228 F.3d at 394-95, and the lack of Fifth Circuit cases that specifically identify constitutionally-mandated suicide prevention measures, it cannot be said that all reasonable officers in Defendants' circumstances would realize Defendants' actions violated the Constitution. As stated above, Defendants' conduct did not rise to the level of deliberate indifference when compared to precedent in this Circuit. Therefore, Defendants' actions were objectively reasonable.

### 2. Deliberate Indifference

As stated in section III-B-1-a-ii above, the summary judgment evidence does not establish that either defendant subjectively intended harm to occur or acted with anything more than negligence. Plaintiffs have not established a genuine dispute of material fact as to whether Defendant Gomez or Defendant Garza was subjectively deliberately indifferent. Therefore, the motion is granted as it relates to both defendants.

### 3. State Law Claims

Defendants move for summary judgment on any state law claims to the extent they are asserted. (D.E. 19, Page 21). Plaintiffs state they have not and are not asserting any claims other than those under § 1983. (D.E. 20, Page 18). Plaintiffs' complaint states the Court has supplemental jurisdiction to hear state claims that will be set forth but the complaint does not include any state claims. It appears this sentence was boilerplate language inadvertently included by Plaintiffs. (D.E. 20, Page 18). Therefore, Defendants' Motion for Summary Judgment is denied as moot as it relates to state law claims that have not been asserted.

## IV. CONCLUSION

There is no genuine dispute of material fact that Plaintiffs cannot establish a violation of Toomey's constitutional rights. Therefore, Defendants are entitled to qualified immunity and their summary judgment motion is **GRANTED** on that basis. Similarly, Plaintiffs have failed to establish a genuine dispute of material fact as to whether Defendants were deliberately indifferent, which is a required element of Plaintiffs' claims. Therefore, Defendants' summary judgment motion is also **GRANTED** on this basis. Finally, Plaintiffs have not alleged any state law claims and Defendants' motion relating to state law claims is **DENIED as moot**. For the reasons stated above, Defendants' Motion for Summary Judgment (D.E. 19) is **GRANTED in part** and Plaintiffs' claims are **DISMISSED**.

SIGNED and ORDERED this 8th day of January, 2018.

Janis Graham Jack
Senior United States District Judge